LAW LIBRARY

IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | ) CRIMINAL CASE NO. CF0230-11 |
| | ) |
| vs. | ) DECISION & ORDER ON |
| | ) DEFENDANT'S POST |
| TIMMY HERNANDEZ QUIDACHAY, | ) VERDICT MOTION FOR |
| | ) JUDGMENT OF ACQUITTAL |
| Defendant. | ) |
| | ) |

## INTRODUCTION

This matter came before the Honorable Maria T. Cenzon on October 29, 2013 on Timmy Hernandez Quidachay's ("Defendant") Motion for Judgment of Acquittal. Defendant was present and represented by Assistant Alternate Public Defender Jeffery L. Warfield and Assistant Attorney General Gabrielle L. Rossi represented the People of Guam (the "People").

After reviewing the Defendant's Motion, the evidence presented at trial, and the applicable law, this Court finds that the jury's guilty verdict was legally supported by sufficient evidence and hereby DENIES the Defendant's Motion for Judgment of Acquittal.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was indicted on May 10, 2011 on one charge of Theft of Utilities (as a 3rd Degree Felony) under 9 GCA § 43.51(a).[1] Jury Trial was held October 24-25, 2013. At the close of the People's case in chief on October 25, 2013, Defendant submitted an oral motion for judgment of acquittal under 8 GCA § 100.10 on the grounds of impossibility. Defendant claimed the evidence presented by the People indicated that *no* meter existed at the location of

---

[1] Title 9 GCA § 43.51(a) states: "A person is guilty of *theft* if he knowingly tampers with, alters or by-passes meters for the purpose of obtaining electrical power, gas or water without paying compensation to the entity providing such services. A person commits theft if he knowingly diverts telephone service, electrical power, gas or water to his own benefit or to the benefit of another not entitled thereto with the intent to avoid payment to the entity providing such service."

the alleged crime and contended that it was therefore impossible for him to "…tamper[ ] with, alter[ ] or by-pass[ ] meters for the purpose of obtaining electrical power, gas or water without paying compensation to the entity providing such services."[2] The Court reserved ruling on the motion.    At the close of the defense case, but prior to submission of the case to the jury, Defendant renewed his motion for judgment of acquittal on the grounds that the People had only presented evidence that electricity was being used on May 16, 2011 at 169 Okkodo Road, although Defendant was living at 168 Okkodo Road at the time in question and was charged with committing the crime "on or about the 28th day of April 2011." *See* Indictment (May 10, 2011).    During oral argument on the renewed motion, the People proffered to amend the Indictment pursuant to 8 GCA § 55.20 by including 9 GCA § 43.51(b) in the charge against the Defendant.  The Indictment, however, only charged the Defendant with a violation of 9 G.C.A. §§ 43.51(a).  The law relating to *Theft of Utilities* states as follows:

§ 43.51. Theft of Utilities.

> (a) A person is guilty of *theft* if he knowingly tampers with, alters or by-passes meters for the purpose of obtaining electrical power, gas or water without paying compensation to the entity providing such services. A person commits theft if he knowingly diverts telephone service, electrical power, gas or water to his own benefit or to the benefit of another not entitled thereto with the intent to avoid payment to the entity providing such service.

> (b) Unauthorized Electrical Connections; Bypass or Obstruction of Meter. Every user, contractor or business who shall unlawfully and knowingly injure, alter, or procure to be injured, make or cause to be made any connection in any manner whatsoever with any electric wire or electric appliance of any character whatsoever operated by any user, users, corporations or government entities authorized to generate, transmit and sell

---

[2] Title 9 GCA § 43.51(a) (emphasis added). Section 43.51(a) provides two distinct ways that a defendant can be found guilty of theft of utilities. Only one form of liability requires the presence of a utility meter.

electric current, or who shall so willfully and knowingly with intent to injure or defraud, use or cause to be used any such connection in such manner as to supply any electric current for heat or light or power to any electric lamp, apparatus or device, by, or at which electric current is consumed or otherwise used or wasted, without passing through a meter for the measuring and registering of the quantity passing through such electric wire or apparatus, or who shall, knowingly or with like intent injure, alter or procure to be injured or altered any electric meter, or obstruct its working, or procure the same to be tampered with or injured, or use or cause to be used any electric meter, or appliance so tampered with or injured, shall be deemed guilty of a theft constituting a felony in the third degree, and shall be subject to any and all fines, penalties and terms of imprisonment applicable by law, as well as any and all fines payable to the Guam Power Authority.

Upon resuming that afternoon, the Court denied the Defendant's initial motion for judgment of acquittal made at the close of the People's case, finding that sufficient questions of fact and credibility existed for the jury to consider. The Court then reserved its decision on the renewed motion for judgment of acquittal made at the close of the Defense case and the People's request to amend the Indictment to conform to the evidence.

On October 28, 2011, the Court denied the People's motion to amend the Indictment to include subsection (b) of 9 GCA § 43.51 because the addition of subsection (b) to the Indictment would add an additional offense and would substantially prejudice the Defendant who had now rested his case.[3] *See* 8 GCA § 55.20, which allows an indictment "to be amended upon application of the prosecuting attorney at any time before the verdict or finding if no

---

[3] The People argued that in a previous case involving *Theft of Utilities*, specifically, *People v. Tracey Lee Calvert*, CF0157-12, the court therein permitted the People to amend the Indictment to remove the charge of violating 9 GCA § 43.51(a) and to charge the defendant with only violating 9 GCA 43.51(b) and 43.20(b). *See* Second Amended Indictment, *People of Guam v. Calvert*, CF0157-12 (April 10, 2013). However, the original Indictment in *Calvert* had charged the defendant with violating both subsections (a) and (b) of 9 G.C.A. § 43.51 and § 43.20(b). *See* Indictment, *Calvert*, CF0157-12 (March 20, 2012).

additional [or] different offense is charged and the substantial rights of the defendant are not prejudiced." *See also People v. Riocne*, 2012 Guam 5 ¶ 7. However, the Court found merit in Defendant's argument of impossibility as to the first section of 9 GCA § 43.51(a)("A person is guilty of theft if he knowingly tampers with, alters or by-passes meters for the purpose of obtaining electrical power, gas or water without paying compensation to the entity providing such services."). The Court agreed that the People's evidence showed that there was no meter on the property during the time of the alleged crime and, as such, it was impossible to tamper with, alter or by-pass a meter. The Court granted, in part, Defendant's renewed motion for judgment of acquittal and ordered that the jury would only be asked to deliberate on whether or not the Defendant had "knowingly divert[ed]. . . electrical power. . . to his own benefit" under the second clause of 9 GCA § 43.51(a)("A person commits theft if he knowingly diverts telephone service, electrical power, gas or water to his own benefit or to the benefit of another not entitled thereto with the intent to avoid payment to the entity providing such service.").

The jury returned a verdict of guilty on October 29, 2013 as to the charge of Theft of Utilities (as a 3rd Degree Felony), finding beyond a reasonable doubt that the Defendant, on or about the 28th day of April 2011, "knowingly diverted electrical power to his own benefit with the intent to avoid payment for such service, in violation of 9 GCA §§43.51(a)." (sic). Indictment (May 10, 2011). Upon return of the guilty verdict, Defendant renewed his instant Motion for Judgment of Acquittal under 8 GCA § 100.30 for insufficiency of evidence that the Defendant received any benefit from the diversion of electricity. The Court took the matter under advisement.

## APPLICABLE LAW

A motion for judgment of acquittal should be granted "if the evidence is insufficient to

sustain a conviction of such offense or offenses." 8 GCA § 100.10 (2005). Under Guam law, "[t]he trial court determines whether a motion for judgment of acquittal should be granted by applying the same test used when the sufficiency of the evidence is challenged." *People v. Chin Song*, 2012 Guam 21 ¶ 27 (citing *People v. Tennesen*, 2009 Guam 3 ¶ 14). When ruling on a motion for judgment of acquittal, a court is only "concerned with the existence or nonexistence of evidence, not its weight." *Chin Song* ¶ 29 (citing *State v. Weston*, 625 S.E.2d 641, 648 (S.C. 2006)).

This Court denied the first two motions for judgment of acquittal because it found that the evidence presented by both the People and Defendant required weighing the credibility of various witnesses, determining the plausibility of conflicting explanations, and making inferences. Such denials were predicated on permitting the jury to exercise "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Chin Song* ¶ 18 (citing *People v. Jesus*, 2009 Guam 2 ¶ 60 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))). After weighing all of the evidence presented in this case, the jury returned a unanimous verdict that Defendant was guilty of Theft of Utilities (as a 3rd Degree Felony).

The Guam Supreme Court has ruled that "[a] verdict of guilty removes the presumption of innocence to which a defendant had formerly been entitled and replaces it with a presumption of guilt. *Chin Song* ¶ 28 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011); other citations omitted). Thus, this Court conducts its review of the sufficiency of the evidence at this stage by determining whether "crediting all of the People's evidence and drawing every reasonable inference from it in favor of the prosecution, a rational trier of fact could find [the defendant] guilty beyond a reasonable doubt." *People v. Anastacio*, 2010 Guam 18 ¶ 17 (citing *People v.*

*Maysho*, 2005 Guam 4 ¶ 6 and *People v. Guerrero*, 2003 Guam 18 ¶ 13).

## ANALYSIS

The People introduced more than sufficient evidence of an illegal physical diversion of power to both 168 and 169 Okkodo Road. Matthew Manibusan, an investigator with 11 years of experience with Guam Power Authority ("GPA") testified that he personally observed a direct connection from a secondary power line to extension cords leading into *both* 168 and 169 Okkodo Road. Jury Trial Proceedings at 2:43:16 to 3:10:59 (Oct. 24, 2013). Furthermore, Manibusan and People's witness Arlene Sahagon took multiple pictures depicting this connection, which the People introduced into evidence. *See* People's Exhibits 9-20. Arlene Salagon, an internal auditor at GPA, also testified that she did not see a power meter at either 168 or 169 Okkodo Road, that the power connection was not a GPA-authorized connection between the power line and the homes (referred to as a "service drop"), and GPA records indicated that the homes had not had accounts with GPA for several years and were actually subject to an outstanding balance. Jury Trial Proceedings at 3:12:01 to 3:22:37 (Oct. 24, 2013). A rational trier of fact would have had ample evidence to determine that an illegal diversion of power existed at 168 and 169 Okkodo Road based upon the testimony of these two witnesses and the introduced exhibits.

Defendant argues that he was staying at 168 Okkodo Road and there is no evidentiary basis for claiming that power was supplied to that specific location for his benefit. However, the People rebut this proposition by the observations of both Matthew Manibusan and Officer Jerome Andrew regarding the close physical proximity of the two houses and the splitting of the connection from the secondary power line to each residence. *See* Jury Trial Proceedings at 3:02:48 to 3:10:08 (Oct. 24, 2013) and 9:20:03 to 9:44:16 (October 25, 2013). The defense

witness, Christina ("Tina") Muna, stated that she asked Defendant to move into 168 Okkodo Road while she was off-island, to help take care of her mother who resided at 169 Okkodo Road. Jury Trial Proceedings at 10:26:37 to 10:43:46 (Oct. 25, 2013). The testimony of Tina Muna and her brother Melvin Muna, who resided at 169 Okkodo Road,[4] would permit the jury to make an inference that the two residences, located on a single lot or compound, functioned as one household and Defendant could benefit from power diverted to 169 Okkodo, even if he may have resided at 168 Okkodo and did not consume any power at the latter location. Alternatively, the jury could infer, as the People propose, that the extension cords going into 168 Okkodo are sufficient to create belief beyond a reasonable doubt that Defendant derived a benefit from the mere *availability* of power at his residence, regardless of whether he *actually* consumed any.

Defendant further argues that no evidence was presented that power was actually used on or about April 28, 2013, as charged in the Indictment. The People presented testimony from Officer Jerome Andrew which states that he entered 169 Okkodo Road on May 16, 2013 and observed that power was being used due to the presence of cold items in a refrigerator. Jury Trial Proceedings at 9:20:03 to 9:44:53 (Oct. 25, 2013). Officer Andrew's testimony and photographs, entered as People's Exhibits 24-31, corroborated the observations that Manibusan and Sahagon observed first-hand on April 28, 2013. The corroborating evidence and virtually identical observations less than three weeks apart would permit a jury to reasonably infer that the physical setup which permitted power to be available at and consumed at 169 Okkodo Road on May 16, 2013 would also permit power to be available and consumed on April 28, 2013,

---

[4] *See* Testimony of Melvin Muna. Jury Trial Proceedings at 3:23:01 to 3:38:47 (Oct. 24, 2013).

despite the lack of any direct evidence to that effect.

The jury apparently also found that the Defendant's statement to Manibusan that he would "take the blame" for the illegal hookup was credible and, therefore, fulfilled the requirement that Defendant "knowingly diverted electrical power. . . with the intent to avoid payment. . ." (emphasis added). The People presented Defendant's statement on April 28, 2013 to Matthew Manibusan that "he'll take the blame" as an admission of guilt. Jury Trial Proceedings at 3:02:00 to 3:04:26 (Oct. 25, 2013). Defendant would have the jury believe that the statement was not an admission of culpability, but rather an acceptance of the consequences. Assuming its ambiguity, the jury nevertheless determined that statement to be evidence of his knowledge, intent and, ultimately, his culpability, when combined with other evidence – both direct and indirect – presented during the trial.

The Defendant offered evidence that another individual was responsible for the illegal connection. Tina Muna, the Defendant's girlfriend, testified that she believed that her brother Anthony was responsible for the hookup. Jury Trial Proceedings at 10:26:37 to 10:33:48 (Oct. 25, 2013)("I just know that he did it."). However, the jury, having considered all of the evidence, found that it supported a finding, beyond a reasonable doubt, that Defendant was guilty of the offense of theft of utilities.

## CONCLUSION

Based upon the evidence that was introduced at Defendant's trial and interpreting this evidence in a light most favorable to the People and drawing every reasonable inference from the evidence in favor of the People, a rational trier of fact could have found that 1) electrical power was illegally diverted from GPA to the houses at 168 and 169 Okkodo Road 2) Defendant, while staying at 168 Okkodo Road derived a benefit from the diverted power and 3)

Defendant knowingly diverted that electrical power and did so with the intent to avoid payment.

Consequently, Defendant's Motion for Judgment of Acquittal after a guilty verdict pursuant to 8 GCA § 100.30 is properly **DENIED.**

A Sentencing Hearing in this matter is scheduled for December 17, 2013 at 3:30 PM.

**SO ORDERED** this 2nd day of December, 2013.

**HONORABLE MARIA T. CENZON**
**Judge, Superior Court of Guam**

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.

12-2-13

Jesse C. Franquez
Deputy Clerk, Superior Court of Guam